FILED
CHARLOTTE, NC
AUG 13 2025
US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CATHY WILLIAMS AND CATHERINE SEGURA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>ELECTROLUX CONSUMER PRODUCTS, INC, ELECTROLUX NORTH AMERICA, INC. AND CURTIS INTERNATIONAL, LTD.,<br><br>*Defendants.* | Case No.: 3:25-cv-00598<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, Cathy Williams and Catherine Segura ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit the following Class Action Complaint against Defendants, Electrolux Consumer Products, Inc, Electrolux North America Inc. ("Electrolux") and Curtis International, LTD ("Curtis" or "Curtis International")., collectively referred to as "Defendants" and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit as individuals who purchased Defendants' Electrolux and Curtis International LTD mini-fridge (hereinafter "Products", or "Mini-Fridge") for normal household use.

2. Electrolux is believed to be the owner of the Frigidaire line of appliances.[1]

3. Curtis International is believed to possess the license to manufacture and market the Frigidaire line of appliances[2][3].

4. Upon information and belief, the Mini-Fridges were manufactured overseas, in China, as instructed by Curtis International.[4]

5. The Products were sold at Walmart and other stores nationwide and online at Walmart.com and Amazon.com.[5]

6. Accordingly, these Frigidaire Mini-Fridges are distributed, marketed, and sold by Defendants to consumers, such as Plaintiffs, across the United States.

7. Unfortunately, the Products' internal electrical components can short circuit and ignite the surrounding plastic housing contained within the Mini-Fridge, posing fire and burn hazards.

8. The Recall applies to 634,000 units that were sold nationwide and online between January 2020 and December 2023, priced at around $36 to $40.[6]

9. The Products are defective due to faulty internal electrical components that can short-circuit and ignite the surrounding plastic housing. This hazard poses a massive fire risk.

10. Other companies design, manufacturer formulate, produce, and sell non-defective mini-fridges with production methods that do not cause the Products to overheat and potentially catch fire, which is evidence that the fire risk inherent with Defendants' Products is

---

[1] https://www.en.frigidaire-la.com/sobre-nosotros
[2] https://www.curtisint.com/
[3] https://www.curtisint.com/about-us/
[4] https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage
[5] https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage
[6] https://www.wyff4.com/article/frigidaire-mini-fridge-recall/65520255

demonstrably avoidable.

11. Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

12. Plaintiffs purchased the Products while lacking the knowledge that the Products could have faulty internal electrical components that can short-circuit and ignite creating a fire risk and exposing users to a possible burn hazard.

13. All consumers who purchased the worthless and dangerous Products have suffered losses.

14. As a result of the above losses, Plaintiffs seek damages and equitable remedies on behalf of themselves and the putative class.

## **PARTIES**

15. Plaintiff Cathy Williams is a resident and citizen of Columbus, Ohio. Columbus is located in Franklin County.

16. Plaintiff Catherine Segura is a resident and citizen of Spillville, Iowa. Spillville is located in Winneshiek County.

17. Defendant Electrolux Consumer Products, Inc. is a US corporation organized and existing under the laws of the State of Delaware. The Defendant's Registered Agent for service of process is located at 1209 Orange Street, Wilmington, Delaware 19801. The Corporation Trust Company is its Registered Agent.

18. Defendant Electrolux North America, Inc. is believed to be a subsidiary of the "Electrolux Group" of companies. It has its headquarters in Charlotte, North Carolina[7].

---

[7] https://www.electroluxgroup.com/en/markets-north-america-16587/

3

According to the North Carolina Secretary of State website, the company is deemed to be a foreign corporation formed in the State of Ohio. According to the Ohio Secretary of State's webpage, this entity's Registered Agent for service of process is CT-Corporation located at 4400 Eastern Common Way, Suite 125, Columbus, Ohio 43219.

19. Curtis International LTD is a Canadian Company Headquartered in Ontario, Canada[8].

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d).

21. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed itself to this District's jurisdiction and authority, given that the Defendants have conducted substantial business in this judicial district and in the State of North Carolina through the national sale of its products.

22. This Court has personal jurisdiction over the Defendant Electrolux of North America, Inc. as this Defendant has its business headquarters located in Charlotte, North Carolina.[9]

23. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that the distribution and sale of the defective product occurred within this District.

## FACTUAL ALLEGATIONS

24. On July 25, 2025, the CPSC issued a recall for Electrolux's Frigidaire-brand models holding 6 or 9 cans. The impacted models included: EFMIS129 (A2001 to

---

[8] https://www.curtisint.com/contact-us/
[9] https://www.electroluxgroup.com/en/markets-north-america-16587/

4

A2308, EFMIS129-B and EFMIS129-C excluded), EFMIS137 (A2001 to A2312), EFMIS149 (A2001 to A2308), EFMIS175 (A2001 to A2310)[10].

25. Defendant Curtis International has received reports of at least 26 incidents involving the mini-fridge overheating, melting, catching fire, units sparking, and in some cases causing smoke inhalation injuries.[11]

26. Curtis International Expressly warrants the merchantability of its Frigidaire products on its website: *"When used under normal operating conditions, as outlined by the manufacturer in your user manual, your CURTIS, SYLVANIA, RCA, PROSCAN, FRIGIDAIRE, HAMILTON BEACH product is warranted to be free from manufacturer's defects in material and workmanship".*[12]

27. Electrolux also publicly promotes an express limited warranty on its website: *"Electrolux appliances are built to last with quality at the forefront. We also want our consumers to have peace of mind when purchasing Electrolux appliances. Electrolux appliances come with a standard limited warranty, and in some cases, an additional limited parts warranty.* ***Certain limitations or exclusions may apply; for complete terms and conditions, refer to the applicable appliance limited warranty pages linked below.***" [13]

28. The brand of the recalled product is "Frigidaire". Frigidaire maintains a website and also proclaims having a warranty: *"This product is guaranteed for a term If (l) one year from the date of purchase, it covers malfunctions and will be serviced free of charge in labor and spare parts."*[14]

---

[10] https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage
[11] *Id*
[12] https://www.curtisint.com/product-support/
[13] https://www.electrolux.com/en/warranty/warranty-information
[14] https://www.en.frigidaire-la.com/politica-de-garantia

5

29. The Products were sold at Wal-Mart and other stores national wide and online at Walmart.com and Amazon.com. At this time, the Defendant is offering a refund.[15] Plaintiffs purchased the Product as "new" and intended it for ordinary use.

30. This remedy and refund is inadequate and fails to address any property damages or other damages due to the actual fires caused by the Products, despite such being noted in the recall itself.[16] The remedy and refund also requires users to verify the model numbers.[17] Such verification is impossible if the recalled and defective Mini-Fridge has caught fire, as is the reason for such a recall. In all, Defendant's refunds and proposed remedy are ineffective and inadequate.

### *Defendants' Misrepresentations and Omissions are Actionable*

31. Plaintiffs bargained for a Product that was safe to use. Defendant's Products were, and are, unsafe. As a result of the fire risk while using the mini-fridge, Plaintiffs, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a product that contained faulty internal electrical components that can short-circuit and ignite the surrounding plastic housing exposing users and their guests to burn hazards during ordinary use. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

32. The Products are not fit for their intended use as they expose consumers to a fire hazard. Plaintiffs are further entitled to damages for the injury sustained in being exposed to such

---

[15] https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage
[16] https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage
[17] https://www.recallrtr.com/minifridge

6

danger, damages related to the Defendant's conduct, and injunctive relief. Plaintiffs seek to recover damages because the Products are adulterated, defective, worthless, and unfit for ordinary use due to the risk of catching fire.

33. The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

34. Indeed, no reasonable consumer, including the Plaintiffs, would have purchased the Product had they known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

35. Plaintiffs bought their mini fridges for personal use. Plaintiffs intended to purchase a Product that would be safe for normal use but instead was sold a dangerous fire hazard. If Plaintiffs had been aware of the risk of the mini fridges catching on fire, they would not have purchased the Product or would have paid significantly less. As a result of the Defendant's actions, Plaintiffs have incurred damages.

## CLASS ACTION ALLEGATIONS

36. Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). This nationwide recall involves over 600,00 product units sold across the United States. As such, meeting minimal diversity and the jurisdictional amount is easily established. More specifically, the class and subclass are defined as follows:

**National Class: All persons within the United States who purchased Frigidaire-brand Minifridges EFMIS129 (A2001 to A2308, EFMIS129-B and EFMIS129-C excluded), EFMIS137 (A2001 to A2312), EFMIS149 (A2001 to A2308), EFMIS175 (A2001 to A2310) within the statute of limitations.**

**Ohio Subclass: All persons within the state of Ohio who purchased**

7

**Frigidaire-brand Minifridges EFMIS129 (A2001 to A2308, EFMIS129-B and EFMIS129-C excluded), EFMIS137 (A2001 to A2312), EFMIS149 (A2001 to A2308), EFMIS175 (A2001 to A2310) within the statute of limitations.**

**Iowa Subclass: All persons within the state of Iowa who purchased Frigidaire-brand Minifridges EFMIS129 (A2001 to A2308, EFMIS129-B and EFMIS129-C excluded), EFMIS137 (A2001 to A2312), EFMIS149 (A2001 to A2308), EFMIS175 (A2001 to A2310) within the statute of limitations.**

37. This Nationwide Class shall be referred to herein as the "National Class." The Ohio and Iowa Subclasses shall be referred to herein as the "Subclasses" Collectively the National Class and the Subclasses shall be referred to has the "Class" unless otherwise noted. Plaintiffs reserve the right to amend the Class definition and/or add Subclasses if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

38. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

39. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40. The proposed Class is so numerous that the joinder of all members is impracticable.

41. This action has been brought and may be properly maintained on behalf of the Class

proposed herein under Federal Rule of Civil Procedure 23.

42. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiffs' only through the discovery process. Preliminary estimates suggest that 634,000 units are subject to recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

43. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiffs' claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

44. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs and the members of the Class were all consumers of a defective product posing a fire hazard. Plaintiffs will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interest to those of the Class, and Defendant has no defenses unique to the

Plaintiffs.

45. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of the Plaintiffs and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

46. Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendants will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged

10

violations, and the members of the Class a may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

47. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

    a.  Whether the internal electrical components within the mini-fridge can short circuit and ignite the surrounding plastic housing;

    b.  Whether Defendant's wrongful retention of the Plaintiffs' and Class Members' payments was an act of conversion; (what about the refund offer?)

    c.  Whether Defendant's retention of Plaintiff and Class Members' payments was a violation of Defendant's duty of good faith and fair dealing;

    d.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    e.  Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

**CAUSES OF ACTION**
**(ON BEHALF OF PLAINTIFFS AND THE CLASSES)**

**COUNT I**
**BREACH OF EXPRESS WARRANTY**

48. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

49. Plaintiffs bring this claim against Defendants on behalf of themselves and each Member of the National Class and Subclasses. Plaintiffs formed a contract with Defendants at the time they purchased the Products. The terms of the contract included express warranties created by Defendants through affirmative representations, advertising, packaging, labeling, and marketing of the defective 6-and 9-can size mini-fridges. Defendants, through these

11

marketing and advertising efforts, expressly warranted that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiffs, Class Members, and Defendants.

50. Defendants made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendants reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products' safety and fitness.

51. Plaintiffs and the Class Members fulfilled all conditions precedent to Defendants' liability under this contract, including purchasing the Products in reliance on Defendant's representations.

52. Defendants breached its express warranties because the Products were defective, internal electrical components can short circuit and ignite the surrounding plastic housing and presented a serious fire hazard contrary to their representations. The Products failed to conform to the express affirmations and promises made by the Defendants.

53. Plaintiffs and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for fire hazards and burn injuries.

54. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other relief deemed appropriate by the Court.

## COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

55. Plaintiffs incorporate the allegations set forth in the previous Paragraphs as though set forth

fully herein.

56. Plaintiffs bring this claim against Defendants on behalf of themselves and the other Members of the Nationwide Class and the Ohio and Iowa subclasses (the "Classes").

57. Defendants are merchants engaged in the business of manufacturing, distributing, warranting, and/or selling the Products.

58. The Products are goods under the relevant laws, and at all times relevant, Defendants knew or had reason to know of the specific use for which these Products were purchased.

59. Defendants entered into agreements with retailers to distribute and sell the Products to consumers, including Plaintiffs and Class Members, for personal and household use.

60. The implied warranty of merchantability, which applies to all sales of goods, means that Defendants warranted that the Products were fit for their ordinary purpose-- namely, to safely provide a mini-fridge without posing unreasonable risks of harm.

61. However, Defendants breached the implied warranty of merchantability because the Products were defective, not fit for their intended use, and posed a risk of overheating during ordinary use creating a fire hazard. As a result, they were unfit for their ordinary purpose of safe transportation and play.

62. This implied warranty applies to all purchasers of the Products, including Plaintiffs and Class Members, because they reasonably relied on Defendants' status as merchants and sellers of safe, functional goods.

63. Privity of contract is not required, as Plaintiffs and Class Members are the intended beneficiaries of Defendants' implied warranties. Defendants' warranties were created for the benefit of consumers, including Plaintiffs and Class Members.

64. Defendants were on notice of the defects through consumer complaints, reports of

13

Case 3:25-cv-00598-KDB-SCR     Document 1     Filed 08/13/25     Page 13 of 18

overheating incidents, and the recall of the Products, yet failed to address these defects before selling the Products to consumers.

65. Had Plaintiffs, Class Members, and other consumers known that the Products contained internal electrical components that could short circuit and ignite the surrounding plastic housing, they would not have purchased them or would have paid significantly less.

66. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class Members suffered and continue to suffer financial harm, injury, and other damages. Plaintiff and the Classes seek all available damages, including compensatory damages, attorneys' fees, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

67. Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

68. Plaintiffs bring this claim against Defendants on behalf of themselves and the other Members of the Nationwide Class and other subclasses (the "Classes").

69. Defendants are merchants engaged in the sale of goods, including the defective mini-fridge, to Plaintiffs and the Class.

70. There was a sale of goods from Defendants to Plaintiffs and Class Members, thereby establishing a commercial relationship between Defendant and consumers.

71. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendants impliedly warranted that the Products were merchantable and fit for their intended use.

72. However, contrary to these representations, the Products were defective and unfit for their

ordinary use, as they posed a significant risk of having internal electrical components that can short circuit and ignite the surrounding plastic, which was not disclosed to consumers at the time of sale.

73. Defendants breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

74. Defendants were on notice of this breach, was aware of adverse safety risks caused by the Mini-Fridge containing electrical components that can short circuit yet failed to take corrective action before selling the Products.

75. Plaintiffs and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

76. Plaintiffs and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendants' expertise and reputation as merchants when purchasing the Products.

77. Plaintiffs and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

78. The Products were defective at the time they left the exclusive control of Defendants, meaning that Defendant bears responsibility for the defect.

79. The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

80. Plaintiffs and Class Members purchased the Products without knowing of the defect, which was undiscoverable at the time of purchase but existed when the Products left Defendants' control.

15

Case 3:25-cv-00598-KDB-SCR    Document 1    Filed 08/13/25    Page 15 of 18

81. As a direct and proximate result of the defective Product, Plaintiffs and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

82. Defendants attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

83. Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

### COUNT IV
### UNJUST ENRICHMENT

84. Plaintiffs incorporate the allegations set forth in previous Paragraphs as though set forth fully herein.

85. Plaintiffs bring this claim against Defendants on behalf of themselves and the other Members of the Nationwide Class and the other subclasses (the "Classes").

86. This claim is plead in the alternative to other claims, should the court find that claims of expressed or implied warranties are inapplicable.

87. Collectively, the Defendants designed, marketed, manufactured and sold the Mini-Fridges subjected to CPSC recall 25-395.

88. Consumers, such a Plaintiffs, conferred a monetary benefit upon the Defendants when they purchased the Mini-Fridges.

89. These Mini-Fridges pose a significant fire safety risk and is reported to have caused

numerous physical injuries, and property damage, prior to the recall being issued.[18]

90. As such, these Products are not safe for their intended use and have no value. Under these circumstances, it would be improper for any of the Defendants to retain any revenue generated by the sale of these defective Mini-Fridges. Permitting Defendants to not refund or return the monies gained by the sale of the Mini-Fridges would unjustly enrich Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

---

[18] https://www.cpsc.gov/Recalls/2025/Curtis-International-Recalls-Frigidaire-brand-Minifridges-Due-to-Fire-and-Burn-Hazards-More-Than-700-000-Reported-in-Property-Damage

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August, 12, 2025        Respectfully submitted,

                                           s/*Ryan Valente*
                                           Ryan Valente
                                           (N.C Bar No 40140)
                                           **Poulin | Willey | Anastopoulo, LLC**
                                           32 Ann Street
                                           Charleston, SC 29403
                                           T: (803) 222 – 2222
                                           E: ryan.valente@poulinwilley.com
                                                 cmad@poulinwilley.com

                                           *Attorneys for Plaintiff and the Putative Class*